[630 NYS2d 769]

JUDITH TELLER, Respondent-Appellant, v BILL HAYES, LTD., et al., Appellants-Respondents.

Second Department, August 21, 1995

APPEARANCES OF COUNSEL

*Stim & Warmuth, P. C.,* Huntington *(Joseph D. Stim* of counsel), for appellants-respondents.

*Tanner Propp & Farber,* New York City *(Lester J. Tanner* and *Deborah A. Gunset* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

MILLER, J.

The central question to be answered on this appeal is whether the defendant corporation and its principal, a home

improvement contractor who allegedly misled the plaintiff and overcharged her for improvements to her home, are liable for damages pursuant to the consumer fraud provisions of General Business Law § 349, in addition to the other remedies available to the plaintiff. Under the circumstances of this case we hold that the corporate and individual defendants have demonstrated their entitlement to judgment as a matter of law dismissing the plaintiff's consumer fraud causes of action.

The facts underlying this appeal may be stated as follows. The plaintiff owned a home in East Hampton. While walking her dog one day, she happened upon the individual defendant general contractor performing renovations on a nearby house. After lengthy negotiations, the plaintiff hired the defendants to undertake significant renovations on her home. The plaintiff contends, *inter alia,* that the defendants performed their contractual obligations in a substandard manner, overbilled for work done, billed for work not done and, in essence, engaged in a course of fraudulent conduct which resulted in her allegedly paying the defendants approximately $1,250,000 for work the defendants estimated could be done for $350,000.

The plaintiff's complaint alleged seven causes of action against the corporate defendant Bill Hayes, Ltd., and six against Bill Hayes in his individual capacity. On the parties' prior appeal *(see, Teller v Bill Hayes, Ltd.,* 172 AD2d 604), we sustained the dismissal of the first two causes of action sounding in fraud. This Court also reversed the dismissal of the plaintiff's third cause of action alleging a violation of General Business Law § 349, concluding that the plaintiff had stated a cause of action.

By the instant motion, the defendants sought to dismiss the plaintiff's sixth cause of action sounding in negligence pursuant to CPLR 3211 (a), and summary judgment on the third cause of action asserting claims of consumer fraud in violation of General Business Law § 349. The Supreme Court denied this relief finding that it was precluded from considering these issues. The court held that these issues had been previously litigated and was of the opinion that this Court's prior order reversing the earlier dismissal of the General Business Law cause of action precluded an order awarding the defendants summary judgment thereon. Procedurally, we disagree with the court's reasoning that the defendants' motion is barred by the law of the case or any other variety of res judicata since the issues raised by the instant motion were never raised on

any prior applications revealed in the record. On the merits, we find that the defendants' motion should be granted.

■ ■ The defendants contend that dismissal of the sixth cause of action alleging theories of negligence was appropriate since the prior motion did not seek to dismiss this cause of action and therefore the prior order and appellate determinations were not law of the case as to this issue. On the merits it is clear that the defendants are correct. The plaintiff's claims are grounded in the breach of a construction contract and as a general rule, the breach of a contract does not give rise to tort liability unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract (see, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382, 389; Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382; 431 Conklin Corp. v Rice, 181 AD2d 716, 717). In this case, the plaintiff has not established the existence of any breach of an independent duty so as to give rise to a negligence cause of action and to warrant a departure from the general rule. Therefore, on the merits, the sixth cause of action should be dismissed.*

■ The more significant issue presented by this appeal concerns the defendants' motion for summary judgment on the plaintiff's consumer fraud causes of action under the General Business Law. On the parties' prior appeal, we reinstated the plaintiff's third cause of action alleging a violation of General Business Law § 349, "[a]ccording the complaint every fair and reasonable intendment" (Teller v Bill Hayes, Ltd., 172 AD2d, supra, at 605). Contrary to the Supreme

---

* ■ The parties have completely failed to address one additional procedural wrinkle. The prior CPLR 3211 (a) (7) motion did not seek any relief with regard to the plaintiff's cause of action to recover damages for negligence and therefore dismissal is not precluded by application of the doctrine of law of the case. Insofar as the instant motion seeks to dismiss the cause of action to recover damages for negligence for failing to state a cause of action, it is a second CPLR 3211 (a) (7) motion which runs afoul of the single motion rule (CPLR 3211 [e]; see, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:55). However, the defendants' present motion is also one for summary judgment as to the plaintiff's General Business Law claims. Given this Court's broad powers to search the record to award summary judgment, even to a nonmoving party, and in light of the plaintiff's failure to raise an objection pursuant to CPLR 3211 (e) in either the Supreme Court or in this Court, we deem it appropriate to search the record to award the defendants summary judgment on the plaintiff's cause of action sounding in negligence (CPLR 3212 [b]).

Court's conclusion, however, the fact that a cause of action was found to have been stated does not preclude a subsequent finding that the defendant is entitled to summary judgment thereon *(see, Mindel v Village of Thomaston,* 150 AD2d 653; *Tenzer, Greenblatt, Fallon & Kaplan v Capri Jewelry,* 128 AD2d 467; *Fink v Horn Constr. Co.,* 58 AD2d 574).

Once again, reaching the merits of an issue not reached by the Supreme Court, we find that the defendants have demonstrated their entitlement to judgment as a matter of law. The third cause of action alleged that the defendants committed acts of "consumer fraud". General Business Law § 349 (a) proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state". While at first blush one might conclude that the defendants deceived the plaintiff regarding the costs of the renovation of her home, section 349 of the General Business Law has generally been construed so as to be inapplicable to private contract disputes of this kind.

Section 349 of the General Business Law was intended to be a consumer protection statute. As stated by the court in *Genesco Entertainment v Koch* (593 F Supp 743, 751), "Section 349 wears its purpose on its face; it is entitled 'Consumer Protection From Deceptive Acts and Practices' ". In fact, prior to 1980, only the Attorney-General could prosecute an action pursuant to General Business Law § 349 (L 1980, ch 346; *see,* Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 566). Thus, the Court of Appeals, in *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank* (85 NY2d 20, 25), stated that a plaintiff under General Business Law § 349 must charge conduct that is consumer-oriented. It is generally agreed that "consumer-oriented" conduct must have a broader impact on consumers at large *(Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra,* at 25). In other words, the deceptive act or practice may not be limited to just the parties. While the statute does not require the plaintiff to prove a repetition or pattern of deceptive behavior *(Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra),* it does require a showing of potential impact on consumers at large, a showing conspicuously absent in this case.

Prior to the Court of Appeals decision in *Oswego Laborers',* the courts had imposed a requirement that the plaintiff prove that the conduct of the defendant was a recurring act *(see, Myers, Smith & Granady v New York Prop. Ins. Underwriting*

*Assn.,* 201 AD2d 312, 313, *affd on other grounds* 85 NY2d 832; *Holmes Protection v Provident Loan Socy.,* 179 AD2d 400; *99 Realty Co. v Wall St. Transcript Corp.,* 160 Misc 2d 850). However, as the *Oswego Laborers'* Court explained, this is not a requirement of the statute. The Court pointed out that the statute was meant to " 'afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds' " (85 NY2d, *supra,* at 25, quoting Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472-473). However, the Court did not alter the theretofore governing rule that single-shot, "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute" *(Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, supra,* at 25).

Courts have traditionally applied General Business Law § 349 in the context of consumer sales transactions. "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising" *(Genesco Entertainment v Koch,* 593 F Supp 743, 751, *supra).* And, "[t]he New York cases where plaintiffs have recovered under section 349 (h) further reflect its consumer orientation since they uniformly involve transactions where the amount in controversy is small" *(Genesco Entertainment v Koch, supra,* at 752). The court in *Goldberg v Manhattan Ford Lincoln-Mercury* (129 Misc 2d 123, 125-126) digested some of the relevant case law to provide a sample list of typical transactions cognizable under General Business Law § 349: "The kinds of trade practices which have been considered as deceptive in the past include false advertising *(Eastern Air Lines v New York Air Lines,* 559 F Supp 1270; *State of New York v Ginzburg* [104 Misc 2d 292]), pyramid schemes *(State of New York v Phase II Sys.,* 109 Misc 2d 598), deceptive preticketing *(Benrus Watch Co. v Federal Trade Commn.,* 352 F2d 313, *cert denied* 384 US 939), misrepresentation of the origin, nature or quality of the product *(Century Metalcraft Corp. v Federal Trade Commn.,* 112 F2d 443), false testimonial *(Federal Trade Commn. v Colgate Palmolive Co.,* 380 US 374), deceptive collection efforts against debtors *(In re Scrimpsher,* 17 Bankr 999), deceptive practices of insurance companies *(Sulnar v General Acc. Fire & Life Assur. Corp.,* 122 Misc 2d 597) and 'bait and switch' operations *(Electrolux Corp. v Val-Worth, Inc.,* 6 NY2d 556)".

That General Business Law § 349 was primarily intended to

apply to more modest transactions "is evidenced by the remedies it provides. Section 349 (h) provides parties with the opportunity to receive the greater of actual damages or $50" *(Genesco Entertainment v Koch,* 593 F Supp 743, 751-752, *supra).* Even treble damages available under the statute for willful violations are capped at one thousand dollars (General Business Law § 349 [h]). Clearly, the instant home remodeling contract for hundreds of thousands of dollars is unlike the causes previously decided pursuant to General Business Law § 349.

At the other end of the spectrum, and clearly not cognizable under the statute, are large, private, single-shot contractual transactions. The archetype of this kind of transaction is the contract for the rental of Shea Stadium discussed in *Genesco Entertainment v Koch (supra).* There, the court held that because of the "complex arrangements, knowledgeable and experienced parties and large sums of money" involved, the parties did not need the protection of General Business Law § 349 *(Genesco Entertainment v Koch, supra,* at 752).

In the same vein is the contract discussed in *Quail Ridge Assocs. v Chemical Bank* (162 AD2d 917). The contract there involved a multimillion dollar deal to acquire and develop a condominium complex. The Court there held that "In view of the patently complex nature of this multimillion dollar transaction, demonstrated by the agreement itself * * * we conclude that this is a commercial transaction of the ' "single shot" ' type * * * outside the scope of General Business Law § 349 (a)" (162 AD2d 917, 920, *supra).*

Most recently, in *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank* (85 NY2d 20, *supra),* the Court applied General Business Law § 349 to a fact pattern unlike any that had gone before. In that case, the plaintiff union fund was allegedly defrauded by the defendant bank into opening interest-bearing accounts which paid less interest than other available accounts. When the plaintiff discovered that it had earned less interest than it had anticipated, it claimed that the bank had engaged in consumer fraud in violation of General Business Law § 349.

The Court of Appeals reviewed the governing case law and held that the allegations of fraud fell within the ambit of the General Business Law: "The record indicates that defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the

[plaintiffs' representative] with standard documents presented to customers upon the opening of accounts. The account openings were not unique to these two parties, nor were they private in nature or a ' "single shot transaction" ' *(Genesco,* 593 F Supp 743, 752, *supra).* Thus, plaintiffs have satisfied the threshold test in that the acts they complain of are consumer-oriented in the sense that they potentially affect similarly situated consumers" *(Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20, 26-27, *supra).*

The plaintiff contends that the holding of *Oswego Laborers'* marks a liberalization of the General Business Law and an expansion of its reach. She invites this Court to herald its expansion by applying it to the facts of this case. We decline the invitation. As the case law makes clear, this enactment was not intended to turn a simple breach of contract into a tort. The statute permits the recovery of treble damages and attorney's fees "to a prevailing plaintiff" (General Business Law § 349 [h]). The statute was intended to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses. It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract. Indeed it has been observed: "GBL §§ 349-350 should not be permitted to become an adjunct to ordinary commercial litigation, arbitrarily raising the stakes through their one-way attorney's fees provisions. The goals of GBL §§ 349-350 were major assaults upon fraud against consumers, particularly the disadvantaged" (Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 574-575).

Application of the foregoing principles to the facts of this case leads to the conclusion that while the commercial relationship between the parties exhibited characteristics of both a large-scale single-shot transaction outside the scope of the statute, as well as those of a consumer-oriented deal within the reach of the law, we are persuaded that it is more akin to the large-scale, one-shot kind of transactions to which the law has generally been held inapplicable.

Notably, the plaintiff has failed to adduce any evidence that the claimed fraudulent behavior is repetitive or is even capable of repetition. The parties met while the plaintiff was walking her dog. There was no solicitation by the defendants, and no indication that they possessed or acted upon any defrauding intent. The plaintiff has wholly failed to demon-

strate that the defendants utilized any fraudulent advertisements or any other false solicitations which might induce other homeowners to succumb to the defendants' alleged fraud. Further, this dispute arises out of a contract between the parties with a stated value of $350,000, and on which the plaintiff allegedly paid in excess of $1,000,000. Thus, as in *Quail Ridge (supra)*, the size of the disputed amount alone is evidence of the complexity of the transaction. The contract was negotiated at arm's length; the plaintiff had no obligation to contract with the defendants to do her renovations. Arguably, the parties were not equally knowledgeable and experienced, but the plaintiff bears some burden to educate herself before signing a contract to pay several hundred thousand dollars. Given the size of this contract, the plaintiff should have taken at least some steps to safeguard her own rights. Stated differently, there was not the disparity of bargaining power present in this case that is a signature of the more run-of-the-mill consumer fraud case.

Furthermore, the plaintiff has failed to adduce any evidence that the defendants' alleged practices would have any impact upon similarly situated consumers. The plaintiff essentially contends that she was defrauded and unless she is afforded relief the defendants will go on defrauding others. However, the plaintiff has adduced no evidence to support this claim.

It is significant that on the parties' prior appeal, we sustained the dismissal of the plaintiff's first two causes of action sounding in fraud for reasons stated by Justice Underwood who correctly held that "no cause of action to recover damages for fraud arises when the only fraud charged relates to a breach of contract" *(see, Kotick v Desai*, 123 AD2d 744). The plaintiff has failed to adduce any relevant proof, or to even advance any cogent arguments, why her causes of action to recover damages for consumer fraud should be treated any differently from her causes of action to recover damages for general fraud. Simply stated, the plaintiff possesses viable causes of action to recover damages for breach of contract which, upon the instant record, she has failed to demonstrate should be augmented by rights to additional recovery, with counsel fees and potential treble damages, just because the contract allegedly breached was one arguably of a consumer nature.

Finally, since the thrust of the plaintiff's cross motion for leave to serve an amended complaint was to enable her to plead with greater specificity her causes of action sounding in

fraud, consumer fraud, and negligence, no purpose would be served by the proposed amendment since these causes of action have been dismissed *(see, Staines v Nassau Queens Med. Group,* 176 AD2d 718).

Accordingly the order must be modified by deleting the provisions thereof which denied the defendants' motion and substituting therefor (1) a provision granting the branch of the defendants' motion which was for summary judgment dismissing the plaintiff's third cause of action, and (2) a provision, upon searching the record, awarding summary judgment to the defendants dismissing the plaintiff's sixth cause of action.

ROSENBLATT, J. P., THOMPSON and FLORIO, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof which denied the defendants' motion pursuant to CPLR 3211 (a) and 3212 to dismiss the plaintiff's third and sixth causes of action, and substituting therefor (1) a provision granting the branch of the defendants' motion which is for summary judgment dismissing the third cause of action, and (2) a provision, upon searching the record, awarding summary judgment to the defendants dismissing the plaintiff's sixth cause of action; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with costs to the defendants.