[700 NYS2d 184]

ELISE M. NEGRIN, Appellant, v NORWEST MORTGAGE, INC., Respondent.

Second Department, November 15, 1999

### APPEARANCES OF COUNSEL

*Fruchter & Twersky,* New York City (*Mitchell M. Z. Twersky* of counsel), and *Jeffrey S. Abraham* for appellant. (One brief filed.)

*Reed Smith Shaw & McClay, L. L. P.,* New York City (*Anthony J. Laura* of counsel), for respondent.

### OPINION OF THE COURT

S. MILLER, J. P.

The issues raised on this appeal involve mortgage industry practices which the plaintiff alleges are illegal. Specifically, the plaintiff argues that the defendant's imposition of certain charges in connection with the payoff of her mortgage violates Real Property Law § 274-a and General Business Law § 349. For the reasons that follow, we agree that the plaintiff has stated cognizable causes of action, and thus we reverse the or-

der appealed from granting the defendant's motion to dismiss the complaint.

## I. BACKGROUND

In preparation for the sale of her Staten Island condominium, on or about August 5, 1997, the plaintiff telephoned the defendant, Norwest Mortgage, Inc. (hereinafter Norwest), and asked for a payoff letter, also known as an estoppel certificate, to ascertain the exact amount necessary to satisfy the mortgage on the premises held by Norwest. Norwest complied with the request and, on or about August 6, 1997, it faxed a payoff letter to the plaintiff's attorney. In addition to the amount of outstanding principal and per diem interest due to satisfy the loan, the payoff statement also included a "recording fee" of $13.50 and a "Fax Fee" of $10. The transaction closed on September 10, 1997, and the plaintiff paid the now-disputed $23.50.

Approximately two weeks later, the plaintiff commenced this purported class action, alleging that Norwest had improperly imposed thousands of such fees on mortgagors. Specifically, the first cause of action alleged that the $10 fax fee constituted an unlawful charge in violation of Real Property Law § 274-a. The second cause of action alleged that the recording and fax fees constituted deceptive consumer practices in violation of General Business Law § 349.

The defendant responded with a motion pursuant to CPLR 3211 (a) (7) to dismiss the complaint. The two-paragraph supporting affirmation of counsel stated that the plaintiff had no cognizable claims inasmuch as her mortgage obligated her to pay all costs of discharge.

The plaintiff argued in her opposition papers, *inter alia,* that Norwest improperly charged a $13.50 recording fee since it did not record the mortgage satisfaction. Rather, the plaintiff paid the closing agent $55 for the recording of the satisfaction. Thus, the plaintiff's counsel argued, Norwest charged for a service it did not perform. The plaintiff's counsel further argued that the $10 fax fee was exorbitant and violative of the express language of Real Property Law § 274-a.

Norwest submitted a reply affirmation and supporting documentation which raised legal issues, *inter alia,* disputing the applicability of Real Property Law § 274-a and contending that its provisions were not triggered by other than a written request for payoff documents. Furthermore, Norwest contended that the plaintiff had no private right of action for a violation of Real Property Law § 274-a.

The Supreme Court granted the defendant's motion, concluding that nothing in Real Property Law § 274-a or General Business Law § 349, "expressly or by implication prohibit[ed] the imposition of the challenged fees." Furthermore, the court found that "there was nothing deceptive about their imposition." Accordingly, the court granted the defendant's motion to dismiss the complaint. We now reverse.

## II. REAL PROPERTY LAW § 274-A

■ There is not a wealth of case law construing the provisions of Real Property Law § 274-a. In pertinent part, the statute provides:

"1. The holder of a mortgage upon real property shall execute and deliver to the owner of the real property upon which such mortgage is a lien a written instrument setting forth the amount of the principal of said mortgage remaining unpaid, the date to which interest has been paid, and the amounts, if any, claimed to be unpaid upon said mortgage for principal and interest, itemizing the same, provided, however, that prior written demand by registered or certified mail has been made upon the holder of such mortgage by such owner of the real property and that such owner of the real property shall have executed and delivered to another a written contract to convey, or shall have received a written commitment to make a mortgage loan upon, the real property or an interest therein. * * * An owner of real property who shall have complied with the foregoing requirements and who shall not have received the written instrument from the holder of the mortgage thereon within twenty days after such compliance shall be entitled to petition a court of competent jurisdiction for an order requiring such holder of the mortgage to comply with this section.

"2. (a) The mortgagee of an owner-occupied, one-to-six family residential structure or residential condominium unit, shall deliver within thirty days, any mortgage related documents to an authorized individual making a bona fide written demand for such documents. *The mortgagee shall not charge for providing the mortgage-related documents*, provided, however, the mortgagee may charge not more than twenty dollars, or such amount as may be fixed by the banking board, for each subsequent payoff statement provided under this subdivision. If the mortgagee fails to deliver the mortgage-related documents, the mortgagee shall be liable for the actual damages to the mortgagor by reason of such failure. * * *

"(iii) 'Bona fide written demand' means a written demand made by an authorized individual in connection with a sale or

refinancing of the mortgaged property or some other event where the mortgage is reasonably expected to be paid off or assigned. Such demand shall either be delivered personally, or by registered or certified mail, postage prepaid, return receipt requested. * * *

"(iv) 'Mortgage-related documents' means * * *

"(2) a payoff statement setting forth the balance of the mortgage, including principal, interest and other charges assessed pursuant to the loan documents, together with a per diem rate for interest accruing after the date to which the balance has been calculated." (Real Property Law § 274-a [1], [2] [emphasis added].)

In support of its motion to dismiss, Norwest provided the court with a copy of the Bill Jacket accompanying the enactment of chapter 132 of the Laws of 1993 which amended Real Property Law § 274-a by adding subdivision (2), which obligates mortgagees to provide payoff statements at no charge to residential homeowners. The legislative materials in the Bill Jacket clearly demonstrate that the amendment was passed to "encourage" mortgagees to provide timely satisfactions of mortgages so as to establish "a procedure which could help avoid the near 100,000 mortgages, open of record but long ago paid off, which needlessly clogged the system" (Mem of Senator Owen Johnson, Bill Jacket, L 1993, ch 132).

The evil to be corrected by the statute was that, especially in rural areas, mortgagees were lax in recording satisfactions. Additionally, as expressed in the memo of the State Banking Department, the bill was intended to help homeowners selling or refinancing their homes by setting reasonable time frames in which the lender *must* comply with requests for necessary documents. Not one of the supporting statements, nor the joint memorandum in support by Assemblyman Robach and Senator Johnson, mentions the reason behind the provision requiring payoff documents to be provided at no charge. Nevertheless, it is reasonably inferable that the Legislature intended to compel mortgagees to provide satisfactions in an expeditious manner, and determined that mortgagees were not entitled to additional compensation for this ministerial act. Simply stated, recalcitrant mortgagees were not to be rewarded for doing that which was legally required of them anyway.

Contrary to the argument advanced by Norwest and adopted by the dissent, however, the fact that Real Property Law § 274-a expressly prohibits the imposition of fees for payoff letters demanded in writing does not grant a mortgagee license to

impose unwarranted and unauthorized fees merely because a mortgagor happens to request the payoff documents by telephone. It is clear that the amendment to Real Property Law § 274-a was intended to affect recalcitrant mortgagees, i.e., those who failed to provide timely mortgage satisfactions. Thus, the statute was designed to create a formal demand procedure, evidenced by a writing which, if ignored, would be actionable via a petition to compel compliance (*see,* Real Property Law § 274-a [1]) plus actual damages (*see,* Real Property Law § 274-a [2] [a]). However, there is absolutely no indication in the statute, and no justification in reason, to hold, as does the dissent, that while a mortgagee must provide a free payoff statement in response to a written demand, it is permitted to impose charges in response to oral demands. This makes no sense and clearly was not intended by the Legislature.

The dissent relies upon the authority of *Matter of Horseheads Commercial Dev. Partners v Horseheads Indus. Realty Assocs.* (227 AD2d 764) in support of the proposition that a written demand for payoff documents is a condition precedent to a mortgagee's duty to provide free payoff documents, absent which it may impose charges. We disagree, as this case is wholly inapposite.

In *Horseheads (supra)*, the petitioner owned certain property encumbered by mortgages held by the respondent. In an apparent refinancing attempt, the petitioner obtained a mortgage commitment from a new lender and requested that the respondent provide payoff statements, but the respondent failed to do so. *After the mortgage commitment expired,* the petitioner commenced a proceeding pursuant to Real Property Law § 274-a to compel the respondent to provide the payoff statements. The Supreme Court granted the petition but the Appellate Division, Third Department, reversed.

That Court noted that Real Property Law § 274-a only conferred upon mortgagors the right to obtain payoff statements when they were in contract to sell or refinance; mortgagees were not required to provide superfluous payoff statements when no relevant transaction was pending. The petitioner commenced the proceeding to compel the mortgagee to provide the payoff statements *after* the petitioner's refinance mortgage commitment had expired. Since there was no longer a refinance or sale transaction pending at the time the proceeding was commenced, the mortgagee was no longer obligated to provide the payoff statements and thus the matter was academic at the time it was initiated. The Court held: "[h]aving determined

that the written *commitment* is a condition precedent, we conclude that the matter was moot prior to the commencement of the proceeding" (*Matter of Horseheads Commercial Dev. Partners v Horseheads Indus. Realty Assocs., supra,* at 766 [emphasis added]).

Clearly the "written commitment" held to be a condition precedent of the right to commence a proceeding to compel the production of mortgage documents pursuant to Real Property Law § 274-a in *Horseheads* (*supra,* at 766), is not the same as a written *demand* for a payoff statement. The statute should be construed to require prompt, no-charge compliance irrespective of the manner in which the request is transmitted. An oral request for a payoff statement should be honored with the same consideration as a written demand. The legislative history makes it clear that the statute was not intended to permit mortgagees to impose charges for payoff documents provided in response to oral requests when they are absolutely precluded from doing so in response to written demands. Thus, absent some evidence that it was justified in so doing, Norwest's imposition of a $10 fax fee is prima facie evidence of a violation of Real Property Law § 274-a.

Notably, the Supreme Court did *not* conclude that Real Property Law § 274-a is inapplicable to oral requests for payoff documents. Rather, the court concluded that a $10 fax charge was not expressly or implicitly improper for the expedited delivery of a payoff statement. This is a different issue. However, as a matter of common sense, the payoff statement is a single-page, computer-generated document that can be faxed just as easily as it can be put into an envelope and mailed. Moreover, insofar as the statute commands, "[t]he mortgagee shall not charge for providing the mortgage-related documents" (Real Property Law § 274-a [2] [a]), this language constitutes an unambiguous expression of Legislative intent not subject to any contrary interpretation (*see,* McKinney's Cons Laws of NY, Book 1, Statutes § 94). Words and phrases in a statute are to be given their ordinary meaning (*see, People v Cruz,* 48 NY2d 419), and the words "shall not charge" can only reasonably be read to prohibit *any* delivery fee, even by fax. Accordingly, the plaintiff stated a cause of action insofar as she alleged that the imposition of the $10 fax fee violated the express provision of Real Property Law § 274-a.

### III. PRIVATE RIGHT OF ACTION

This conclusion, however, necessitates a discussion of a corollary argument raised by Norwest, namely, whether the

plaintiff has a private right of action for Norwest's alleged violation of Real Property Law § 274-a. As Norwest correctly notes, not every violation of a statutory provision is actionable by an individual aggrieved by its breach. Rather, there must be either an express or implied private right of action conferred upon aggrieved parties (*see, Carrier v Salvation Army*, 88 NY2d 298; *CPC Intl. v McKesson Corp.*, 70 NY2d 268). Thus, in the first instance, we must examine Real Property Law § 274-a to ascertain whether it explicitly or implicitly creates a private right of action, as opposed to some other form of regulatory enforcement.

Where a statute does not expressly create a private right of action, the courts may review the legislative history to determine whether the Legislature nevertheless intended, by implication, to permit private suits for statutory violations (*see, Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314). To determine whether a private right of action may be implied from a statute, a three-part test must be satisfied. To be entitled to sue for a statutory violation, the plaintiff must demonstrate: (1) that he or she is a member of the class for whose benefit the statute was enacted, (2) that the recognition of a private right of action would promote the legislative purpose, and (3) that the creation of such a right would be consistent with the legislative scheme (*see, Carrier v Salvation Army, supra; Sheehy v Big Flats Community Day*, 73 NY2d 629; *Henry v Isaac*, 214 AD2d 188; *Americana Petroleum Corp. v Northville Indus. Corp.*, 200 AD2d 646). Contrary to the defendant's conclusory contentions, it is clear that the plaintiff does have a private right of action to recover damages for the defendant's improper imposition of an unwarranted fax fee.

One of the obvious purposes behind the enactment of Real Property Law § 274-a was to ease the burden upon residential mortgagors when dealing with their lenders. The Legislature perceived a problem with mortgagees ignoring requests of borrowers for payoff statements or satisfactions. This statute was thus enacted to give mortgagors some legal leverage in their dealings with their lenders. Mortgagors such as the plaintiff are members of the class for whose benefit the statute was enacted (*see, Oja v Grand Ch. of Theta Chi Fraternity*, 257 AD2d 924; *Henry v Isaac, supra; Earsing v Nelson*, 212 AD2d 66; *Izzo v Manhattan Med. Group*, 164 AD2d 13).

Secondly, the plaintiff must show that the recognition of a private right of action would promote a legislative purpose. Clearly, empowering mortgagors to challenge alleged abuses

by lenders by permitting private actions for violations of Real Property Law § 274-a is consistent with the goals of the statute. The basic purpose of the law is to compel lenders to provide mortgage documents expeditiously and at no charge. Certainly one very effective means of ensuring compliance is to permit borrowers to sue the lender for violations of the statute. While Real Property Law § 274-a does not contain any provision expressly permitting mortgagors to sue to recover illegal fees paid for documents that are required to be provided free of charge, it does expressly confer upon mortgagors a private right of action where a mortgagor has made a written demand and the mortgagee fails to respond. The mortgagor may petition a court for an order compelling compliance, and pursuant to Real Property Law § 274-a (2) (a) "the mortgagee shall be liable for the actual damages to the mortgagor by reason of such failure". Thus, the statutory scheme envisions private actions by aggrieved mortgagors.

The defendant argues that the Legislature's express grant of a private right to sue to compel production of mortgage documents and for damages for their non-production implies that no private right of action was intended for the imposition of unwarranted fees. We disagree. In fact, the opposite is true. The precise question is whether a legislative purpose would be furthered by the recognition of a private right of action, and clearly it would. The statute expressly permits lawsuits for actual damages for the mortgagee's failure to deliver the requested documents. Where a mortgagee imposes a fee in clear violation of the plain language of the statute, this is but another actual damage for a related statutory violation. Thus, the second prong of the test is satisfied.

The third question to be answered, whether the creation of a private right of action would be consistent with the legislative scheme, may also be answered affirmatively. The defendant raises its most strenuous challenge in regard to this factor, as it suggests that the allowance of a private right of action would upset the regulatory scheme. This argument is specious. To be certain, a private right of action will generally be found not to exist where the Legislature has otherwise provided for public enforcement of the law (*see, e.g., Carrier v Salvation Army, supra; Sheehy v Big Flats Community Day, supra; Americana Petroleum Corp. v Northville Indus. Corp., supra; see also, McDonald v Cook*, 252 AD2d 302; *Larson v Albany Med. Ctr.*, 252 AD2d 936). However, there is no regulatory agency that would otherwise enforce compliance with Real Property Law § 274-a.

Thus, the recognition of a private right of action would do no harm to the legislative scheme.

The defendant suggests that the recognition of a private cause of action would usurp the regulatory authority of the New York State Department of Banking. The defendant cites to Banking Law § 39 (2) and argues that the Superintendent has the authority to order the discontinuation of unauthorized practices. However, this argument is a red herring. The Legislature explicitly conferred a private right of action upon mortgagors to sue to compel compliance with Real Property Law § 274-a and for actual damages for its violation. Clearly, there is no statutory scheme *exclusively* authorizing the Superintendent of Banking to enjoin unauthorized practices. Otherwise, the above private rights of action would not have been expressly created. Moreover, Real Property Law § 274-a is not a banking law within the Superintendent's jurisdiction (*see,* Banking Law § 11 [1]; *cf., Walts v First Union Mtge. Corp.,* 259 AD2d 322).

In light of the clear statutory language, we conclude that the plaintiff has alleged a viable, private right of action for the defendant's wrongful imposition of the $10 fax fee. Whether or not this case will ever be certified for class action status, which is an issue not presently before us, the plaintiff does possess a private right of action for the defendant's alleged violation of Real Property Law § 274-a. Thus, the Supreme Court erred in granting the defendant's motion to dismiss the plaintiff's first cause of action.

### IV. CONSUMER FRAUD

■ The plaintiff's second cause of action alleges that by imposing the unlawful and fabricated fax fee and a "recording fee" of $13.50, the defendant engaged in acts of consumer fraud in violation of General Business Law § 349. The Supreme Court dismissed that cause of action by finding "there was nothing deceptive about [the] imposition [of the challenged fees]." This conclusion cannot withstand scrutiny.

Under General Business Law § 349 (a), deceptive acts or practices in the conduct of any business conducted in this State are unlawful (*see, Karlin v IVF Am.,* 93 NY2d 282; *New York Univ. v Continental Ins. Co.,* 87 NY2d 308). The essential elements of a cause of action alleging consumer fraud in violation of General Business Law § 349 are that the defendant engaged in a consumer-oriented misleading practice and that the plaintiff was injured thereby (*see, New York Univ. v Continental*

*Ins. Co., supra; Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20; *Teller v Bill Hayes, Ltd.,* 213 AD2d 141).

There is ample authority to support the plaintiff's consumer fraud claims. The decision in *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank (supra)* is instructive. There, the plaintiff union desired to open certain interest earning savings accounts with the defendant bank. However, the defendant's representative allegedly opened less advantageous accounts, causing the union to lose more than $30,000 in interest.

In reinstating the union's consumer fraud claim, the Court of Appeals noted that in enacting General Business Law § 349, the Legislature sought to protect the consuming public from deceptive practices aimed at them. The practices proscribed by the statute are those likely to have a broader impact on consumers-at-large. The Court further noted that a plaintiff must prove that the defendant acted deceptively in a meaningful way, resulting in injury to the consumer. Though cognizant of a potential flood of litigation, the Court concluded that insofar as the bank allegedly steered the union into a less advantageous account without providing full disclosure of the pertinent facts, the plaintiff alleged a viable claim of consumer fraud.

Other cases have upheld consumer fraud claims asserted against banks based on allegedly deceptive consumer practices. Indeed, in two closely analogous cases, consumer fraud claims were sustained based upon the imposition of unwarranted fees. In *Littlefield v Goldome Bank* (142 AD2d 978), the plaintiff opened savings accounts for his two minor children in 1981. In 1984 the bank began charging a quarterly fee of $3 for accounts with balances below $250. The plaintiff alleged that this fee was unilaterally imposed without notice on existing accounts. The plaintiff commenced a purported class action alleging that the bank engaged in deceptive practices by unilaterally imposing improper fees. The Supreme Court dismissed the plaintiff's General Business Law § 349 cause of action, but the Appellate Division, Fourth Department, reinstated it, holding that the allegations were sufficient to state a consumer fraud claim on behalf of the purported class. The instant action is very similar insofar as it seeks to vindicate the rights of a class of consumers allegedly subjected to unwarranted fees.

Equally persuasive is *Bauer v Mellon Mtge. Co.* (178 Misc 2d 234, *mod sub nom. Walts v First Union Mtge. Corp., supra*).

That case involved class action claims against mortgagees who allegedly failed to notify mortgagors when they had reached the required 75% loan to value ratio that would entitle them to be relieved of private mortgage insurance obligations. The defendants moved to dismiss pursuant to CPLR 3211 (a) (7) but the Supreme Court denied the motion in part, crediting the plaintiff's allegations that by failing to notify mortgagors when their PMI payments could cease, the mortgagee banks misled them into continuing to make unnecessary payments. In pertinent part the Appellate Division, First Department, agreed, stating: "Plaintiffs have adequately alleged a materially deceptive practice aimed at consumers in that Mellon and First Union continued to bill them for PMI premiums, thereby inducing them to believe that they were required to pay them, even after plaintiffs' principal balance dropped below the 75% ratio set forth in Insurance Law § 6503." (*Walts v First Union Mtge. Corp., supra,* at 430.)

The instant plaintiff has raised very similar allegations. Allegations of a bank's unilateral imposition of illegal and/or unwarranted fees upon its customers states a valid claim of consumer fraud.

The defendant contends that the plaintiff received a payoff statement revealing the fax fee and recording charges five weeks prior to the closing, and thus this case falls within the rule that consumer fraud claims may not be predicated upon fully disclosed facts (*see, Sands v Ticketmaster-N. Y., Inc.,* 207 AD2d 687). However, this argument is unpersuasive. The plaintiff was at Norwest's mercy. If she wanted her mortgage satisfied to enable her to sell her condominium and move, the plaintiff had no choice but to pay the $23.50. Any reasonable person would conclude, as the plaintiff did, that the only sane thing to do was to pay the charges rather than jeopardize the closing and the sale of her condominium. As this Court reasoned in *Teller v Bill Hayes, Ltd.* (213 AD2d 141, *supra*), the typical act of consumer fraud involves an individual consumer who falls victim to a commercial entity which enjoys a "disparity of bargaining power" (*Teller v Bill Hayes, Ltd., supra,* at 149). Indeed, the instant controversy over the sum of $23.50 is exactly the kind of small-money dispute to which General Business Law § 349 was meant to apply (*see, Teller v Bill Hayes, Ltd., supra,* at 148; *Genesco Entertainment v Koch,* 593 F Supp 743). While the individual amount sought may be modest, the rights to be vindicated are far greater (*see, Scavo v Allstate Ins. Co.,* 238 AD2d 571).

For the foregoing reasons, Norwest's alleged unilateral imposition of a $10 fax fee, and a $13.50 recording fee, for a service not even performed by the mortgagee, constitute examples, prima facie, of consumer fraud. Assuming the truth of the plaintiff's allegations, as we must in opposition to a CPLR 3211 (a) (7) motion to dismiss (*see, Edmond v International Bus. Machs. Corp.,* 91 NY2d 949), the plaintiff has stated a cause of action based on consumer fraud (*see also, B.S.L. One Owners Corp. v Key Intl. Mfg.,* 225 AD2d 643; *Wegman's Food Mkts. v Scrimpsher,* 17 Bankr 999), and thus the defendant's motion to dismiss the second cause of action should not have been granted.

Accordingly, the order appealed from is reversed, the defendant's motion to dismiss the complaint is denied, and the complaint is reinstated.

H. MILLER, J., dissents and votes to affirm the order appealed from, with the following opinion: In preparation for selling her condominium, the plaintiff, Elise Negrin, telephoned her mortgage company, the defendant, Norwest Mortgage, Inc., on August 5, 1997, and requested that the payoff statement be sent by facsimile. Norwest complied, sending the statement the next day. Included in the statement were two charges, one for $10 listed as a "Fax Fee" and one for $13.50 that was listed as "Recording Fees." The plaintiff did not complain of these charges and used the documents to complete the selling of the property at the closing which occurred on September 10, 1997, approximately 35 days later. About two weeks after the closing, the plaintiff commenced the instant action, stating that the imposition of the fees was in violation of General Business Law § 349 and Real Property Law § 274-a. The defendant thereafter moved to dismiss the complaint on the ground that the plaintiff failed to state a cause of action. The Supreme Court granted the defendant's motion and the instant appeal ensued. I would affirm.

The court properly granted the defendant's motion for summary judgment. The protections granted under Real Property Law § 274-a are triggered by a bona fide written request for the mortgage documents, a condition precedent that is simply not present in the case before us (*see, Matter of Horseheads Commercial Dev. Partners v Horseheads Indus. Realty Assocs.,* 227 AD2d 764). In addition, the fees were disclosed to the plaintiff on the statement that was sent well before the closing date, making the claim of coercion meritless, and the claim of

deceptive practice unsupportable (*see generally, Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20).

JOY and FEUERSTEIN, JJ., concur with S. MILLER, J. P.; H. MILLER, J., dissents in a separate opinion.

Ordered that the order is reversed, on the law, with costs, the motion is denied, and the complaint is reinstated.