Darren J. ALEXSON, Plaintiff,

v.

HUDSON VALLEY COMMUNITY COLLEGE; John Buono, Individually and in his capacity as President of Hudson Valley Community College; Stephen M. Curtis, Individually and in his capacity as the former President of Hudson Valley Community College; Willie A. Hammett, Individually and in his capacity as Vice–President for Student Services of Hudson Valley Community College; Richard E. Bennett, III, Individually, and in his capacity as Assistant Director, Continuing Education, Hudson Valley Community College; Kathleen A. Cogan, Individually, and in her capacity as Campus Coordinator of the College Judicial System of Hudson Valley Community College; Eric Carlson, Individually, and in his capacity as Adjunct Instructor of Hudson Valley Community College; and The Board of Trustees of Hudson Valley Community College, Defendants.

No. 98–CV–1801.

United States District Court,
N.D. New York.

Dec. 20, 2000.

Law Offices of Bob Cohen, Nassua, NY (Bob Cohen, of counsel), for plaintiff.

Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander, Albany, NY (Elizabeth M. Dumas, of counsel), for defendants Hudson Valley Community College, John Buono, Stephen M. Curtis, Willie A. Hammett, Richard E. Bennett III, Kathleen A. Cogan, Eric Carlson, and The Board of Trustees of Hudson Valley Community College.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On November 23, 1998, plaintiff Darren J. Alexson ("Alexson" or "plaintiff") commenced the instant action against defendants asserting various causes of action including deceptive business practices under New York General Business Law Article 22–A (Sixth Cause of Action), and breach of contract (Seventh Cause of Action). On June 11, 1999, plaintiff stipulated to dismissal with prejudice of this action against defendant Mercantile Adjustment Bureau, Inc. ("MAB").[1]

Plaintiff now moves for partial summary judgment on his sixth and seventh causes of action, pursuant to Federal Rule of Civil Procedure 56. Defendants oppose. Oral argument was heard on September 5, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

This action arises out of the alleged expulsion of Alexson from defendant Adjunct Instructor Eric Carlson's ("Carlson") class at Hudson Valley Community College ("HVCC") during the summer of 1997. The following are the facts stated in the light most favorable to defendants, who are the non-moving parties.

Alexson was a matriculated part-time student in HVCC's nursing program. In the summer of 1997, he enrolled in a Developmental Psychology class taught by Carlson. He paid the $270 tuition for this class with a credit card. On May 21, 1997, Alexson engaged in a heated and vociferous classroom discussion with Carlson over the accuracy of Carlson's lecture. During this discussion, Alexson became disruptive and threatening. Because it was not the first time he had become disruptive in class, Carlson ordered Alexson to leave, and stated that he would call security and have him removed from the class if he did not leave voluntarily. After some protestation, Alexson left the class.

On May 23, 1997, defendant Richard E. Bennett, III ("Director Bennett"), who was the Assistant Director of Continuing Education at HVCC, contacted Alexson at home and informed him that he would not be permitted to return to Carlson's class until he met with the Vice President for Student Services, Willie E. Hammett ("V.P.Hammett"), to discuss the May 21 incident. Alexson indicated that he would not meet with V.P. Hammett. He never met with V.P. Hammett, and did not return to Carlson's class. He remained a matriculated student at HVCC. He took a course in Abnormal Psychology later in the summer of 1997, and took the Develop-

---

**1.** Because plaintiff's third cause of action for violation of the FDCPA was pled only against MAB, plaintiff has voluntarily abandoned it.

mental Psychology class at HVCC in the Fall 1997 semester with a different instructor.

Alexson received a grade of "Z" for Carlson's Developmental Psychology course. The explanation section of his academic record indicated that a grade of "Z" meant that a student was "absent without withdrawal." He subsequently contacted his credit card company and notified it that he was disputing the $270 charge for the summer ° Developmental Psychology class. When HVCC learned that Alexson had reversed the $270 charge, it adjusted his account to reflect an open balance of $270. Following his repeated refusal to pay this balance, HVCC referred his account to a collection agency, former defendant MAB, and adjusted his account to reflect MAB's thirty percent collection fee (which in this case amounted to $81). In addition, HVCC adjusted its internal records of Alexson's account to indicate a $500 "MAB fee"—which was intended as a flag to notify HVCC employees that the account was overdue and referred for collection.

Alexson attempted to enroll in a HVCC class for the Spring 1998 semester in which he had previously reserved his admission. His reservation for this class was not honored, and he was not permitted to enroll in further classes at HVCC. In addition, HVCC refused to process his repeated requests for release of his transcript.

## III. *STANDARD OF REVIEW*

### A. *Summary Judgment*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).[2]

## IV. *DISCUSSION*

For the reasons set forth below, Alexson's motion for partial summary judgment as to his Sixth (Deceptive Business Practices) and Seventh (Breach of Contract) causes of action must be denied.

### A. *Deceptive Business Practices*

Alexson's sixth cause of action alleges that HVCC engaged in a deceptive business practice in violation of New York General Business Law Article 22–A when it (1) claimed to be entitled to a thirty percent collection fee for referring his account to MAB; and (2) adjusted his account to reflect a $500 "MAB fee" and represented to him that it was necessary

---

**2.** Plaintiff also seeks an Order, pursuant to Fed.R.Civ.P. 56(d), requiring the defendants to identify which material facts are deemed to be in dispute in this case. For a recitation of the material facts which are, or are not, in

dispute in this case, plaintiff is referred to the Statement of Material Facts and Response to the Statement of Material Facts submitted by the parties pursuant to LR 7.1(a)(3).

to pay that fee in order to obtain his academic transcript or to enroll for future courses at HVCC. He argues that these practices were deceptive in that they were not adequately disclosed in the HVCC College Catalog ("the Catalog").[3]

New York State General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." It has been held by New York courts to apply to educational contracts. *See Andre v. Pace Univ.*, 161 Misc.2d 613, 623, 618 N.Y.S.2d 975, 979 (N.Y.City Ct.1994), *rev'd on other grounds*, 170 Misc.2d 893, 655 N.Y.S.2d 777 (citing, *e.g.*, *State v. Interstate Tractor Trailer*, 66 Misc.2d 678, 682, 321 N.Y.S.2d 147, 151–152 (N.Y.Sup.Ct.1971)). The essential elements of a violation of Section 349 are (1) proof that a "consumer-oriented" practice was deceptive or misleading in a material respect and (2) proof that plaintiffs were injured thereby. *See Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39, 48, 700 N.Y.S.2d 184 (2d Dep't 1999); *Berrios v. Sprint Corp.*, 1998 WL 199842 (E.D.N.Y.1998); *McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590 (N.Y.Sup.Ct.1987). The standard for whether a practice is misleading is objective, requiring a showing that the "reasonable consumer would have been misled by the defendant's conduct." *Berrios*, 1998 WL 199842 at *3 (quoting *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996)).

The types of trade practices which courts have found to be deceptive include: (1) false advertising; (2) pyramid schemes; (3) deceptive preticketing; (4) misrepresentation of the origin, nature or quality of the product; (4) false testimonials; (5) deceptive collection efforts against debtors; (6) deceptive practices of insurance companies; and (7) "bait and switch" sales tactics. *See Teller v. Bill Hayes, Ltd.*, 213

A.D.2d 141, 146, 630 N.Y.S.2d 769 (2d Dep't 1995) (collecting cases). The concern in Section 349 cases is with practices that have a broad impact on consumers at large. *See Teller*, 213 A.D.2d at 145, 630 N.Y.S.2d 769 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). Under New York law, private contract disputes, unique to the parties, do not fall within the prohibitions of Section 349. *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F.Supp. 190, 201 (E.D.N.Y.1997).

Alexson argues that both the practice of assessing a thirty percent collection fee, and of noting a $500 "MAB fee" on his student account were deceptive (1) because neither charge represented the actual "collection costs" associated with his refusal to pay the balance due on his account; and (2) because HVCC gave conflicting information as to the balance due on his account, Alexson alleges that he was confused as to how much HVCC asserted he owed to it. HVCC argues in opposition that plaintiff's deceptive practice claim must fail because (1) plaintiff has failed to either plead or prove that the collection fees at issue were "consumer-oriented"; and (2) the facts demonstrate that plaintiff was not deceived by either fee.

It is undisputed that the contract between the parties (i.e., the Catalog) contained a provision which authorized HVCC to recover "any and all associated collection costs, legal fees and/or accrued interest" on a delinquent student account. *See* Catalog at 191. While it is true that a Section 349(a) claim may not be predicated upon fully disclosed facts, *see Negrin*, 263 A.D.2d at 50, 700 N.Y.S.2d 184 (citing *Sands v. Ticketmaster–N.Y., Inc.*, 207 A.D.2d 687, 616 N.Y.S.2d 362 (1st Dep't 1994)), it is not clear from the record whether the Catalog provision at issue did

---

**3.** Alexson attached a copy of the Catalog as Exhibit "A" to his memorandum of law in support of this motion. References to this exhibit will be cited as "Catalog at ___" throughout this decision.

or did not constitute full disclosure to Alexson that he would be responsible for an additional thirty percent charge, without regard to the actual amounts expended on collection efforts if he did not pay his balance in full. Accordingly, the extent to which the Catalog provision was deceptive or misleading, if at all, is a question of fact to be determined at trial.[4]

Plaintiff relies on a case from California, *Bondanza v. Peninsula Hospital and Medical Center*, 23 Cal.3d 260, 152 Cal. Rptr. 446, 590 P.2d 22, 22–27 (1979), to argue that it is deceptive as a matter of law for one party to arbitrarily assess a percentage of the amount in default as collection costs in the absence of an express agreement providing for such an assessment. Alexson's reliance on this case is misplaced.

*Bondanza* involved claims by a class of hospital patients that an agreement between the hospital and patient authorizing the recovery of a "reasonable ... collection expense," under which the hospital imposed a blanket charge equal to one-third of the balance due, violated California's unfair competition statute, Cal.Bus. & Prof.Code § 17200, *et seq.*[5] The California Supreme Court invalidated the agreement at issue on the grounds that (1) such an application of the agreement amounted to the imposition of a liquidated damages provision, which was prohibited under California law; and (2) the unequal bargaining power between the hospital and a patient seeking admission for treatment demonstrated the "underlying unfairness" of the agreement. 152 Cal.Rptr. 446, 590 P.2d at 25–26.

The concerns which motivated the California court in *Bondanza* are not at issue in this case. Unlike Cal.Bus. & Prof.Code § 17200, New York General Business Law § 349 does not permit a consideration of the underlying substantive fairness of the agreement at issue, but instead requires the court to consider only whether the challenged practice constituted a "consumer-oriented misleading practice" by which the plaintiff was injured. *Negrin*, 263 A.D.2d at 48, 700 N.Y.S.2d 184 (citing, *e.g.*, *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Oswego Laborers' Local 214 Pension Fund, supra; Teller, supra*). Because the *Bondanza* decision was based on the punitive nature and unfairness of the challenged practice in that case, and because the reasoning was based on the interpretation of a statute which is significantly different from the one at issue here, it is simply not relevant to this case.

■ Moreover, as to the $500 "MAB fee," HVCC has offered evidence that it was intended solely as an internal flag for college employees, and that no student at HVCC (including Alexson) had ever been required to pay such a fee. Alexson offers conflicting evidence which shows that, on several occasions, he was informed by HVCC that he needed to pay this $500 "MAB fee" to obtain his academic transcript. As such, it is clear that plaintiff has failed to demonstrate that there are no material facts in dispute as to this issue and that the practice of noting a $500 "MAB fee" charge on student accounts was a "consumer-oriented" practice that violated the prohibitions of Section 349. Summary judgment as to his sixth cause of action must be denied.

### B. *Breach of Contract*

■ Plaintiff also moves for summary judgment on his seventh cause of action

---

**4.** While the question of whether or not a practice is deceptive is suitable for resolution on a motion for summary judgment, *see Morris v. Gilbert*, 649 F.Supp. 1491, 1496 (E.D.N.Y.1986), plaintiff has failed to produce sufficient evidence for the issue to be resolved on the instant motion.

**5.** California Business and Professional Code § 17200 provides, in part, that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice...." Cal.Bus. & Prof.Code § 17200 (West 2000).

alleging that HVCC breached its implied contract with him when it denied him his due process rights under the Catalog.

The Catalog contains a "Judicial System of HVCC: Rights and Responsibilities" consisting, in part, of a "Code of Ethics and Behavior Procedures for Processing Complaints"—which established a detailed and comprehensive procedure for the investigation and resolution of formal complaints against students.[6] The introduction to this Code of Ethics states in part that "violations of the codes *may* result in a charge which is heard and adjudicated by one of the Boards under the jurisdiction of the Committee on Ethics and Conduct." Catalog at p. 212. The event which triggers the application of the detailed procedures is the filing of a signed written complaint charging a violation of campus regulations. Catalog at p. 218. The regulations requires "the party bringing the charge" to comply with the procedures set forth in the Catalog. *Id.*

The Catalog references various types of discipline which might be imposed on a student for violations of campus regulations. These include written warnings, letters of reprimand, fines or restitution, suspensions, probation, and expulsion. Discipline may only be imposed following adjudication by a Review Board, whose decisions are subject to appeal. Catalog at 223–25. Again, the first step in the imposition of any such discipline is the filing of a formal written charge, and it is undisput-

ed that no such charge was ever filed in this case.

Viewed in the light most favorable to HVCC, all that occurred in this case was that Director Bennett instructed Alexson to meet with V.P. Hammett prior to returning to Carlson's class. It is not clear from either the contract or the evidence submitted by the parties that this action constituted the sort of "discipline" contemplated by the Catalog's detailed and lengthy disciplinary procedures, or that these procedures were even applicable to this early, informal meeting. Accordingly, there remains a question to be decided by the factfinder in this case: whether or not holding Alexson out of class until he met with V.P Hammett constituted an "expulsion" or other disciplinary action to which the contractual disciplinary procedures would apply. Therefore, summary judgment is not appropriate to the plaintiff on his seventh cause of action.

## IV. *CONCLUSION*

After careful consideration of the submissions of the parties, the relevant parts of the record, the applicable law, and the oral arguments, it is

ORDERED that plaintiff's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

---

6. The Catalog contains the following provision:

**CONDITIONS FOR PROCESSING A COMPLAINT OF VIOLATIONS OF CAMPUS REGULATIONS**

Any member of the College community, guest, or visitors may bring charges of misconduct against an employee or student of Hudson Valley Community College.

All charges must be submitted in writing and signed. Forms will be provided by the College and may be obtained through the Security Office, or Offices of all Division Deans, the Campus Coordinator, or the Vice President for Student Services.

In all instances, the party bringing the charges will follow the procedures set forth. Catalog at p. 218. The Catalog goes on to prescribe separate procedures to follow when the written charge is filed concurrently with, or subsequent to, the observed violation of campus regulations. In all cases, the action which triggers the application of these procedures is the filing of a written charge. It is undisputed that no such charge was ever filed against Alexson—either concurrently with Carlson's observation of his classroom behavior or subsequently by Hammett or any other HVCC official.