■ WAGNER TRADING COMPANY, INC., Respondent, v TONY WALKER RETAIL MANAGEMENT COMPANY, INC., et al., Appellants. (Appeal No. 2.) [764 NYS2d 156] —Appeal from a judgment of Supreme Court, Erie County (Fahey, J.), entered June 27, 2002, upon a jury verdict rendered in favor of plaintiff.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously reversed in the interest of justice without costs and a new trial is granted in accordance with the following memorandum: Addressing first the judgment entered against defendants in appeal No. 2, we agree with defendants that the judgment must be reversed and a new trial granted because Supreme Court's charge to the jury was fundamentally flawed.

Following the close of evidence at trial, the court determined as a matter of law that defendants breached an option agreement under which plaintiff had the option to sell to defendant Tony Walker Retail Management Company, Inc. (TWRMC) a business owned by plaintiff in a shopping mall in Pennsylvania within one year from the date on which the store opened. Under the agreement, any sale would include but not be limited to the store, the store name and good will, all fixtures installed as of the date on which the store first opened, and the inventory in the business as of the date of sale to TWRMC. If plaintiff were to exercise the option, the price to be paid by TWRMC was to "be determined by the total amount of the following costs incurred by [plaintiff]: the cost of the store build out, professional fees including legal and architectural, the cost of the store fixtures and equipment, [and] the cost of the remaining inventory as of the date of the sale." The agreement also stated, inconsistently, that all costs were to be calculated as of the date on which the store first opened for business.

The agreement specifically excluded from the sale any outstanding liabilities of plaintiff and provided that the guarantor of the lease (Mark Wagner, individually) shall remain the guarantor under the terms and conditions set forth in the lease as of the day it was executed.

The agreement further provided that, if the option was properly exercised, the terms and conditions of the sale of the business were to be governed by the contract of sale, attached to the agreement as Exhibit A. The contract was to be "exercised" within 10 days of receipt of the written notice to exercise the option, and the sale date was to be no later than the 30th day following receipt of that notice. Time was made of the essence.

The conditions in the unexecuted contract of sale provided, inter alia, for transfer of specific assets and specific liabilities and further provided that "[a] good faith dispute regarding the determination or calculation of payments due the Seller under this Agreement will not be considered a breach of this Agreement provided that the Buyer deposits the disputed amount in an interest bearing escrow account with a commercial bank and offers to arbitrate the dispute in accordance with the Rules of the American Arbitration Association * * *. In addition to or in lieu of its rights to terminate this Agreement upon a Material Breach by the Buyer, the Seller has the right to pursue any remedies the Seller may have at law or in equity."

Plaintiff's store opened on October 1, 1996. On December 10, 1996, plaintiff exercised its option to sell the business to TWRMC and asked for $123,386.44 as the sale price. On January 9, 1997, TWRMC offered to purchase the business for $48,365.07 plus inventory. No agreement was reached, the store closed on March 10, 1997, and this action was commenced on March 17, 1997. Plaintiff brought this action against TWRMC and its owner, defendant Anthony J. Ragusa, Jr., doing business as The Advantage Company and as Tony Walker Retail Environmental Consultants, alleging that TWRMC was an alter ego of Ragusa. At trial defendants called as a witness the attorney who negotiated the option agreement on behalf of defendants and drafted the contract of sale. He admitted on cross-examination that the buyer neither deposited money in an interest-bearing escrow account nor offered to arbitrate the dispute as required by the contract of sale.

At the close of proof, and outside the presence of the jury, the court determined that the contract of sale, attached to the agreement as Exhibit A, was part of the agreement and that defendants were in breach of their obligation to place money in escrow and to offer to arbitrate. The court further granted defendants' motion to dismiss the fraud cause of action. The court declined to rule on the issue whether Ragusa could be held liable by piercing the corporate veil, reasoning that the issue would be relevant only in the future event that there was a failure to pay damages.

Before summations, the court informed the jury that it had determined as a matter of law that there had been a breach of contract by defendants, but the court did not specify the terms that were breached. In addition, the court informed the jury that the fraud cause of action had been dismissed. Thus, the court instructed the jury that the only question before it was "the amount, if any, of money damages that the Plaintiff is entitled to for the breach of contract."

In its jury charge, the court reiterated that there had been a breach of contract by defendants, without specifying what terms of the contract were breached, and that the only question before the jury was whether plaintiff was entitled to money damages. The jury was instructed that the measure of damages would be the amount set forth in the contract between the parties, i.e., as set forth in the agreement and inthe contract of sale. The court listed eight categories of damages and instructed the jury to "set forth the monetary loss, if any, sustained by Plaintiff * * * as a result of the breach of contract by" all defendants. No further instruction was given regarding the measure of damages.

During deliberations, the jury asked two questions evidencing its confusion. First, it asked whether fixtures and electronic equipment and inventory still in plaintiff's possession could be returned to defendants. The court responded that, "[a]s part of this lawsuit, no. The only thing that you can consider are whether or not the Plaintiff is entitled to money damages and if so, what amount [it is] entitled to." The jury also asked when the breach of contract occurred and whether the contract was null and void after the breach. The court responded, "I've already ruled as a matter of law there's a breach. It's not a question that's before the jury * * *. The only question that's before the jury is what is the value of the damages, if any." The jury returned a verdict finding damages in all eight categories, totaling $104,220.13.

"It is well established that in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequence of the breach" (*Kenford Co. v County of Erie,* 73 NY2d 312, 319 [1989]; *see Kasem v Phillip Morris, USA,* 244 AD2d 532, 533 [1997]). Here, the damages awarded by the jury were unrelated to the failure of TWRMC to place money in escrow or to offer to arbitrate, and thus the damages were not the natural and probable result of the breach determined by the court but not imparted to the jury. While that breach did occur, the damages sought by plaintiff in the complaint were not based on the breach

determined by the court, nor, indeed, can it be said that any of the damages found flowed from the breach determined by the court. As their fourth affirmative defense, defendants asserted that they honored their agreement by offering to purchase the store for $48,365.07 plus inventory. The court refused defendants' further request to instruct the jury that, if it found that plaintiff refused the legitimate offer of defendants and sought to recover more than that to which it was entitled, the jury would have to return a verdict in favor of defendants. Instead, the court merely instructed the jury that, for each of eight categories of damages, it was to "set forth the monetary loss, if any, sustained by Plaintiff." Although defendants failed to object to the charge, as required under CPLR 4110-b, we conclude that the court's instruction on damages was so fundamentally flawed that we may review the court's charge "despite counsel's failure to take timely exception thereto" (*Loucas v A & A Trucking Co.*, 134 AD2d 326, 327 [1987]).

We conclude that there must be a new trial before a different justice on both liability and damages. Plaintiff did not establish its entitlement to any damages arising from the breach of contract determined by the court, and the court precluded the jury from finding whether there was a breach of contract apart from the failure to place money in escrow and to offer to arbitrate and, if so, whether plaintiff is entitled to damages that are the natural and probable consequence of such breach. In view of this disposition, we do not reach the issue whether Ragusa may be held liable by piercing the corporate veil of TWRMC.

With respect to appeal No. 1, plaintiff contends that the court erred in granting defendants' motion for a directed verdict dismissing the cause of action for fraud because there was circumstantial evidence that defendants fraudulently induced plaintiff to enter into the contract. We disagree. Although this Court previously affirmed that part of an order denying defendants' pretrial motion to dismiss the cause of action for fraud pursuant to CPLR 3211 (a) (7) (*Wagner Trading Co. v Walker Retail Mgt. Co.*, 277 AD2d 1012 [2000]), that motion was directed at the pleadings, whereas the order in appeal No. 1 granted defendants' motion for a directed verdict dismissing that cause of action based on the evidence presented at trial. Thus, the prior determination that the complaint stated a cause of action for fraud in the inducement does not preclude a subsequent determination that plaintiff failed to establish its entitlement to judgment on that cause of action at trial (*see Teller v Bill Hayes, Ltd.*, 213 AD2d 141 [1995], *lv dismissed in*

*part and denied in part* 87 NY2d 937 [1996]). A cause of action for fraud in the inducement of a contract requires a promise made "with the undisclosed intention not to perform [it]" (*Wagner Trading Co.*, 277 AD2d at 1012; *see Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 122 [1995]; *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407 [1958]). Plaintiff presented no evidence from which it can be inferred that defendants had a present, undisclosed intention not to perform at the time they made any promises. To the extent that plaintiff contended that it relied on statements directly controverted by language in the contract, we conclude that plaintiff cannot be said to have justifiably relied upon those statements, given the express terms of the contract (*see Valassis Communications v Weimer*, 304 AD2d 448 [2003]; *Marine Midland Bank v Hallman's Budget Rent-A-Car of Rochester*, 204 AD2d 1007, 1008 [1994]). Present—Pine, J.P., Hurlbutt, Gorski, Lawton and Hayes, JJ.