**INTERESTED UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY # 991361018,** Plaintiffs,

v.

**CHURCH LOANS AND INVESTMENTS TRUST, UAB of New Life Christian Center, and Lifedome Ministries Pentecostal Church,** Defendants.

No. 05 Civ. 9522.

United States District Court, S.D. New York.

May 16, 2006.

*DECISION AND ORDER*

MARRERO, District Judge.

Plaintiffs Interested Underwriters at Lloyd's of London subscribing to policy # 991361018 ("Lloyd's") move, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), to dismiss certain counterclaims of defendant Church Loans and Investments Trust ("Church Loans") based on New York General Business Law § 349 (" § 349"). For the reasons set forth below, Lloyd's motion is denied.

## I. FACTS AND PROCEDURAL HISTORY

On February 1, 2004, a fire broke out at the insured property located in the Bronx, New York. In response, Lloyd's initiated an investigation into the loss. Subsequently, a dispute arose over, among other things, the true titleholder of the insured property. Accordingly, on October 13, 2005, Lloyd's filed suit in the New York State Supreme Court, seeking a declaratory judgment concerning several issues, in-

cluding: (1) whether Church Loans was the true owner of the property on the date of the fire; (2) the proper calculation of the value of the property; and (3) whether Church Loans had breached the cooperation clause contained in the policy. The action was removed to this Court pursuant to 28 U.S.C. § 1441, and Church Loans interposed an answer containing eleven counterclaims. (*See* Answer of Defendant Church Loans and Investments Trust, dated Jan. 11, 2006 ("Answer") ¶¶ 60–102.)

Initially, Lloyd's moved to dismiss eight of the eleven counterclaims asserted by Church Loans. Church Loans has since stated that it is withdrawing its first, third, fifth, and seventh counterclaims, all revolving around an allegation that Lloyd's claims processing procedures constitute unfair settlement practices in violation of New York Insurance Law § 2601. (*See* Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaims, dated March 7, 2006 ("Def.Mem.") 2.)

Lloyd's moves to dismiss the second, fourth, sixth, and eighth counterclaims, which essentially comprise an allegation that Lloyd's processing procedures constitute deceptive acts and practices in violation of New York General Business Law § 349. Lloyd's advances two distinct arguments in support of its motion to dismiss: first, that Church Loans has failed to aver sufficient facts to support its claim that Lloyd's engages in dilatory tactics as part of its customary business practices; and second, that Church Loans's claim is inconsistent with the consumer-orientation requirement of § 349 actions.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is

proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In making this determination, a court must accept all well-pleaded factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

### B. *APPLICATION*

#### 1. *Sufficiency of Pleadings*

■ Lloyd's argues that Church Loans's counterclaims based upon § 349 are legally deficient because they are pleaded "without a single evidentiary fact." (Reply Memorandum of Law, dated March 16, 2006, 3.) This argument must fail, as it misconceives the minimal burden Church Loans must satisfy at this early stage of the litigation. It is now clear that an action under § 349 is not subject to the pleading-with-particularity requirements of Federal Rule of Civil Procedure 9(b). *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005). Rather, Church Loans's counterclaims need only meet the liberal pleading requirements of Federal Rule of Civil Procedure 8(a). *See id.* This it has done. Church Loans alleges that Lloyd's engages in dilatory practices as a general policy, describing these practices as "part of [Lloyd's] usual and customary business and claims settlement practices." (Answer ¶ 64.) This generalized accusation is consistently repeated. (*See* Answer ¶¶ 79, 91, 98.) Church Loans' allegations that Lloyd's engages in an ongoing pattern of deceptive practices are sufficiently pleaded to defeat a Rule 12(b)(6) motion to dismiss. *See Vaughn v. Consumer Home Mortgage, Inc.*, No. 01–CV–7937, 2003 WL 21241669, at *5–7 (E.D.N.Y. Mar.23, 2003).

#### 2. *Consumer–Orientation Requirement*

■ Lloyd's motion directs the bulk of its attention to its contention that Church Loans's counterclaims do not satisfy the consumer-orientation requirement of § 349. Section 349 "was intended to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses. It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract." *Teller v. Hayes*, 213 A.D.2d 141, 630 N.Y.S.2d 769, 774 (2d Dep't 1995).

This ground for Lloyd's motion must also fail because it is not beyond doubt that Church Loans can prove no set of facts entitling it to relief under § 349. New York courts have identified at least three factors relevant in the consumer-orientation analysis: (1) the amount of money involved in the agreement; (2) the relative bargaining power and sophistication of the parties; and (3) the nature of the agreement. *See New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (1995). The record now before the Court does not clearly indicate whether Church Loans' claim is more akin to the claim asserted by the plaintiff in *New York University*, or the claim asserted by the union funds in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995).

##### a. *Amount Involved*

Among other things, the *New York University* court stressed that the insurance

policy at issue there was purchased at a premium in excess of $55,000 and involved a potential payout of $10 million. *See* 639 N.Y.S.2d 283, 662 N.E.2d at 770. The size of the agreement has played a prominent role in other cases. *See, e.g., Pfizer Inc. v. Stryker Corp.,* No. 02 Civ. 8613, 2003 WL 21660339, at *4 (S.D.N.Y. July 15, 2003) ($2 billion transaction); *Teller,* 213 A.D.2d 141, 630 N.Y.S.2d 769, 774–75 ($350,000 contract value with payments of over $1 million).

On the other hand, other cases have been held to be consumer-oriented in light of the "modest" nature of the transaction. *See New York Univ.,* 639 N.Y.S.2d 283, 662 N.E.2d at 771 (characterizing the account openings at issue in *Oswego* as "modest").

The insurance policy at issue here was purchased at a premium of $11,000 and involves a potential payout of $750,000. As such, absent a fuller evidentiary record to provide better context, the transaction cannot readily be characterized either as a "modest" transaction that § 349 was indisputably intended to reach or a more substantial transaction that falls outside its ambit.

### b. *Relative Bargaining Power*

The *New York University* court found it significant that the insurance policy at issue in that case was negotiated between an insurance company and a large university employing a director of insurance. *See* 639 N.Y.S.2d 283, 662 N.E.2d at 770. Similarly, in another case on point, the court dismissed the complainant's § 349 claim and, in so doing, emphasized that the two parties there were "large businesses" and "relatively sophisticated entities with equal bargaining powers." *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.,* 328 F.Supp.2d 443, 449; *see also Pfizer,* 2003 WL 21660339, at *4.

Thus, while § 349 would not apply to a large category of disputes between large, sophisticated businesses, commercial entities are not *per se* excluded from bringing an action under § 349. *See Exxonmobil,* 328 F.Supp.2d at 449. Furthermore, § 349 extends to insurance claims, as it "applies to the acts or practices of every business operating in New York." *Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 52 (2d Cir.1992). At the motion to dismiss stage, the Court cannot rule that it is beyond doubt that Church Loans's policy with Lloyd's falls into the excluded class of large business-to-business transactions. Church Loans's size, the assets its controls, the scope of its market, its knowledge and sophistication in the realm of insurance, and other factors unsuitable for consideration at this stage without a more ample evidentiary record are all important in analyzing the relative bargaining power of Lloyd's and Church Loans.

### c. *Nature of the Policy or Agreement*

A third factor that the *New York University* court applied in its analysis was the nature of the agreement. Specifically, the court found it significant that, while the insurance policy contained standard provisions, it was nevertheless "tailored to meet the purchaser's wishes and requirements." 639 N.Y.S.2d 283, 662 N.E.2d at 770. Similarly, the court in *Exxonmobil* noted that "contracts that are not 'standard-issue', but are instead designed to provide services 'tailored to meet the [complainant's] wishes and requirements' are not consumer-oriented for § 349 purposes." 328 F.Supp.2d at 449 (citing *New York Univ.,* 639 N.Y.S.2d 283, 662 N.E.2d at 770).

In contrast, the *Oswego* court emphasized that the account openings at issue in that case were not unique to the two parties, and the complainant was treated just

"as any customer." 623 N.Y.S.2d 529, 647 N.E.2d at 745; *see also Exxonmobil,* 328 F.Supp.2d at 449 (describing the inquiry as whether the "party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers."). Decisions from New York Appellate Division courts have emphasized that standard agreements and policies are significant in showing that challenged actions are consumer-oriented. *See, e.g., Makuch v. New York Cent. Mut. Fire Ins. Co.,* 12 A.D.3d 1110, 785 N.Y.S.2d 236, 237 (4th Dep't 2004); *Joannou v. Blue Ridge Ins. Co.,* 289 A.D.2d 531, 735 N.Y.S.2d 786, 786 (Dep't 2001).

At the motion to dismiss stage, the Court must accept as true Church Loans' characterization of the agreement as a "standard, garden-variety fire insurance policy." (Def.Mem.4.) Accordingly, the possibility that the alleged deceptive practices may affect numerous other consumers of fire insurance suggests that Lloyd's alleged behavior is consumer-oriented. Even so, the nature of the agreement is just one of several factors to be considered in making this determination which, for the reasons discussed above, cannot be made at this stage of the proceedings.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Docket No. 8) of plaintiffs Interested Underwriters at Lloyd's of London subscribing to policy # 991361018 to dismiss certain counterclaims of defendant Church Loans and Investments Trust is DENIED.

**SO ORDERED.**