People v PepsiCo, Inc. (2024 NY Slip Op 24280)

[*1]

People v PepsiCo, Inc.

2024 NY Slip Op 24280

Decided on October 31, 2024

Supreme Court, Erie County

Colaiacovo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 31, 2024
Supreme Court, Erie County

The People of the State of New York, by Letitia James, 
 Attorney General of the State of New York, Plaintiff,

against
PepsiCo, Inc.; Frito-Lay, Inc.; Frito-Lay North America, Inc., Defendants.

Index No. 814682/2023

PEOPLE OF THE STATE OF NEW YORK
ATTORNEY GENERAL LETITIA JAMES
Attorney for Plaintiff
Jennifer C. Simo, Esq., of counsel
WEIL, GOTSHAL & MANGES LLP
Attorney for Defendants
Andrew S. Tulumello, Esq. (pro hac vice) 
Arianna M. Scavetti, Esq. 
Claire L. Chapla, Esq. (pro hac vice)
Robert B. Niles-Weed, Esq.
BARCLAY DAMON LLP 
Attorney for Defendants 
James P. Domagalski, Esq. 
Nicholas J. DiCesare, Esq.
Daniel French, Esq.

Emilio Colaiacovo, J.

Plaintiff commenced this action seeking to hold Defendants responsible for plastic pollution that has accumulated in the Buffalo River. While Plaintiff has not accused Defendants PepsiCo and Frito Lay (hereinafter "Pepsi/Frito Lay") of polluting the water themselves, Plaintiff argues they should be responsible for the conduct of third-parties who have discarded [*2]their products in the Buffalo River. Pepsi/Frito Lay has now moved to dismiss the complaint pursuant to CPLR 3211(a)(7). The motion having been opposed and argued was deemed submitted. The Court's decision is as follows. 
 FACTS & ARGUMENT SUMMARY
Citing an accumulation of plastic products discarded in the Buffalo River, Plaintiff brought this proceeding to address contaminants in the water that endanger public health, potentially harm freshwater species, and threaten the ecosystem. See generally Complaint, ¶2; NYSCEF Doc. #2. In particular, Plaintiff contends that the "plastic pollution interferes with the public's use and enjoyment of the Buffalo River and its environs, and adversely affects the aesthetic value of the river and its shoreline." Id. 
Plaintiff alleges that the Attorney General's office conducted a survey of plastic pollution in 2022. Plaintiff maintains that in the survey, "PepsiCo's plastic packaging far exceeded any other source of identifiable plastic waste, as it was three times more abundant than the next contributor (McDonald's)." Id. at ¶3.[FN1]
Further, Plaintiff alleges that Pepsi/Frito Lay "has long known of the harms caused by its single-use packaging, acknowledging on its website that there is a 'plastic pollution crisis' and that its own packaging has 'potential environmental impacts'." Id. at ¶5. Plaintiff alleges that "[Pepsi/Frito Lay] has failed to abate the harm or warn the public that its plastic packaging is a potential source of plastic pollution and presents a risk of harm to human health and the environment. Instead, it has misled the public about its efforts to combat plastic pollution, while increasing its production and sale of single-use plastic packaging." Id. at ¶8. By continuing to manufacture and distribute single-use plastic packaging, Plaintiff contends Pepsi/Frito Lay has contributed to a public nuisance by facilitating the contamination of local water ways. Further, by engaging in allegedly deceptive and misleading statements, Plaintiff maintains Pepsi/Frito Lay has violated New York General Business Law §349 and New York State Executive Law §63(12). 
In its complaint, Plaintiff argues that "as a result of PepsiCo's and others' persistent manufacturing, production, distribution, and sale of beverages and snack foods in single-use plastic packaging, single-use plastic items have become a dominant form of pollution in urban watersheds such as the Buffalo River." Id. at ¶46. Plaintiff cites to several studies that show Pepsi/Frito Lay as among the top producers of these plastics found in polluted areas. These micro-plastics, as Plaintiff argues, have been detected in popular fish species and have increased "chemical activities" found in other classes.Plaintiff also laments how many of these plastic containers have supposedly damaged local infrastructure, such as the Hamburg drain system.
Plaintiff argues that Pepsi/Frito Lay has refused to use packaging alternatives, while at the same time publicly stating their concern about "potential environmental impacts." Id. at 81. Plaintiff maintains that Pepsi/Frito Lay have made misleading statements about their efforts to combat plastic pollution. For example, Plaintiff cites to Pepsi Co's 2019 announcement stating that it intended to reduce the use of "virgin plastic" in its beverage bottles by 35%. Id. at ¶90. [*3]However, Plaintiff argues that PepsiCo's use of virgin plastics has increased by 5%.[FN2]
Further, Plaintiff insists that Defendants have committed to reducing their use of plastic packaging but have not met their proposed targets.
According to Plaintiff's logic, Defendants are liable, for violating the General Business Law and Executive Law for their "deceptive practices" and have created a public nuisance by producing a product that damages the environment when discarded into the water system by third parties.
Pepsi/Frito Lay argues that there is no basis for the Attorney General to commence this action. Defendants insist that they should not be held liable for the acts of third parties. Further, they maintain that they have not misled anyone regarding the composition of their plastic packaging. While acknowledging the pervasive problem of littering, Pepsi/Frito Lay states "never before has a manufacturer of a safe and lawful product been held liable under New York (or any other) law for the independent decisions of third parties who choose to dispose of the product's packaging improperly (and unlawfully)." See Defendant's Memorandum of Law, p. 1-2; NYSCEF Doc. #29.
With respect to the public nuisance argument, Pepsi/Frito Lay argue that the disposal of the waste is not in their control and, as such, cannot be construed as a public nuisance caused or created by them. Further, Pepsi/Frito Lay state that there is no law or duty to limit the use of plastic packaging and insist that this is a legislative prerogative and not the province of the Attorney General. Defendants insist that that courts should be careful in imposing novel theories of tort liability that . . . are the focus of a national policy debate. See Id. at p. 5-6. In light of the Attorney General's radical and strained interpretation of what defines a public nuisance, Defendants state that dismissal is appropriate.
As for the argument that Pepsi/Frito Lay had a duty to warn, Defendants argue that the allegations contained in the complaint do not establish a duty to warn. Defendants note that nowhere in the complaint does the Plaintiff actually establish an affirmative duty to warn the public that the product is defective. Defendants argue that the intended use of the plastic packaging is not to pollute the environment. If used responsibly by consumers, the environment and surrounding ecosystems would not be negatively impacted. In light of Plaintiff's failure to demonstrate that the plastic packaging is inherently dangerous, Defendants maintain there exists no duty to warn.
Lastly, Pepsi/Frito Lay notes that Plaintiff has failed to demonstrate how Defendants can be liable for misleading conduct. Defendants maintain that their statements about reducing use of plastics are not misleading. Pepsi/Frito Lay argue that they have not made any representations or guarantees about "infinite" recycling. See Id. at p. 17-18. Similarly, Defendants insist that notwithstanding the Attorney General's protestations, there exists no statutory or common law duty that they have violated that would otherwise confer liability.
Defendants take issue with being singled out by the Attorney General's overreach to accomplish a public policy objective by extra-judicial means.

STANDARD OF LAW
Generally, on a CPLR 3211 motion to dismiss, "[w]e accept the facts as alleged in the [*4]complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." Leon v. Martinez, 84 NY2d 83 (1994). "At the same time, however, allegations consisting of bare legal conclusions . . . are not entitled to any such consideration." Simkin v. Blank, 19 NY3d 46 (2012). Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery. See generally Basis Yield Alpha Fund [Master] v. Goldman Sachs Group, Inc., 115 AD3d 128 (1st Dept. 2014).
The Court may or may not grant a CPLR 3211(a)(7) motion "if the plaintiff has identified a cognizable cause of action but failed to assert a material allegation necessary to support the cause of action". Connaughton v. Chipotle Mexican Grill, Inc., 29 NY3d 137 (2017); Guggenheimer v. Ginzburg, 43 NY2d 268 (1977); Christ the Rock World Restoration Church Intl., Inc. v. Evangelical Christian Credit Union, 153 AD3d 1226 (2nd Dept. 2017). "Where evidentiary material is submitted and considered on a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), and the motion is not converted into one for summary judgment, the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate." Rabos v. R&R Bagels & Bakery, Inc., 100 AD3d 849 (2nd Dept. 2012). 

DECISION

Public Nuisance & Failure to Warn
A public nuisance cause of action "exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons." Monaghan v. Roman Catholic Diocese of Rockville Ctr., 165 AD3d 650 (2nd Dept. 2018), citing 532 Madison Ave. Gourmet Foods v. Finlandia Ctr., 96 NY2d 280 (2001). "A public nuisance is a violation against the State and is subject to abatement or prosecution by the proper governmental authority." Id. citing Copart Indus. v. Consolidated Edison Co. of NY, 41 NY2d 564 (1977). There is no duty to warn of an obvious danger of which the product user is actually aware or should be aware as a result of ordinary observation or as a matter of common sense. See generally Liriano v. Hobart Corp., 92 NY2d 232 (1998); see also Felle v. W.W. Grainger, Inc., 302 AD2d 971 (4th Dept. 2003); see also Narvaez v. Wadsworth, 165 AD3d 407 (1st Dept. 2018).
Here, Plaintiff alleges that Defendants'
"acts and omissions, and its widespread plastic pollution in the Buffalo River and along its shores, have created or contributed, and continue to create and contribute, to a substantial interference with the exercise of a common right of the people living in the City of Buffalo and its surrounding areas, interfering with the use by the public of public spaces, and/or endangering or injuring the property, health, safety or comfort of a considerable number of persons."
See Complaint, ¶103. Plaintiff maintains that Defendants knew or should have foreseen that this would result in damage to the public. Fatally, the Plaintiff fails to provide any evidence to support this allegation. While Plaintiff casually refers to "studies" and "surveys", it fails to provide discernible proof that this is the case or, at the motion stage, could arguably be the case.
In People c. Sturm, Ruger & Co., then Attorney General Elliot Spitzer brought an action [*5]against Sturm, Ruger and Co. (hereinafter "Ruger"), a popular manufacturer of firearms. The Attorney General argued that illegally possessed handguns constituted a public nuisance and that Ruger contributed to that public nuisance because they should have known that their product would fall into the hands of individuals who would use it to perpetuate criminal acts. The trial court dismissed the complaint and the First Department affirmed, holding that "the legislative and executive branches are better suited to address the societal problems concerning the already heavily regulated commercial activity at issue." 309 AD2d 91 (1st Dept. 2003). Citing to Hamilton v. Beretta U.S.A. Corp., a New York Court of Appeals precedent that remains unmodified, the First Department restated a long-held legal principle: "the existence of judicial resistance to the expansion of duty grows out of practical concerns both about potential limitless liability and about the unfairness of imposing liability for the acts of another." 96 NY2d 222 (2001). This Court sees no reason to abandon this precedent.
In Ruger, the First Department held that to permit Plaintiffs like the Attorney General to pursue purported offenders without a statutory framework from which to impose liability would give a green light to similar causes of action, such as the one present here, that would "likely open the courthouse doors to a flood of limitless similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities." Ruger, 309 AD2d at 97. The First Department's warnings could not be more prescient. This is exactly what the Attorney General seeks to do today. If permitted, no Defendant would be safe from a race to penalize a party notwithstanding the lack of executive order or legislative law that properly establishes a basis upon which an entity may be subject to civil punishment. As the majority opinion warned, "all a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can somehow be said to relate back to the way a company or industry makes, markets and/or sells its non-defective, lawful product or service, and a public nuisance claim would be conceived and a lawsuit born." Id. It added,
[W]e see on the horizon, were we to expand the reach of the common-law public nuisance tort in the way plaintiff urges, the outpouring of an unlimited number of theories of public nuisance claims for courts to resolve and perhaps impose and enforcesome of which will inevitably be exotic and fanciful, wholly theoretical, baseless, or perhaps even politically motivated and exploitative. Such lawsuits could be leveled not merely against these defendants, but, well beyond them, against countless other types of commercial enterprises, in order to address a myriad of societal problemsreal, perceived or imaginedregardless of the distance between the "causes" of the "problems" and their alleged consequences, and without any deference to proximate cause. Such an explosion of litigation would inappropriately engulf the courts beyond their means in issues which the legislative and executive branches are vastly better designed, equipped and funded to address. Certainly, in this situation, as the Hamilton Court ( 96 NY2d at 239 n 9) and the motion court both pointed out in detail, the problems to which plaintiff's complaint alludes are presently the subject of strict control and regulation by the executive and legislative branches of both the United States and New York State governments. Indeed, they have been for many decades.
Id. at 104-105. This foreshadowing is altogether more troubling since this Plaintiff, a party to Ruger, chose to ignore this holding and pursued these Defendants in spite of it, at great cost. 

Essential to demonstrating the viability of a public nuisance claim is to show that the [*6]product in question is defective or unlawful. Plaintiff has failed to demonstrate either. While no one doubts the harm litter and waste cause in our ecosystem, this does not create a civil cause of action from which to punish Pepsi/Frito Lay. Plastic packaging is used by more than just Pepsi and Frito Lay. Yet, the Attorney General pursued only these Defendants. Either this is a pervasive problem and all offenders have contributed to this "public nuisance" or else it is nothing more than selective prosecution based on a naïve theory. 
Neither the legislature nor the executive branch has passed any law or rule that imposes specific restrictions on reducing the use of plastics. While Plaintiff points to the Green Amendment to the State Constitution which establishes the right to clean water, clean air, and a heathy environment, Plaintiff is unable to reference any statutory obligations that Defendants have violated by producing these bottles and plastic wrappings. Absent evidence showing that these products are defective or unlawful, it is hard to ascertain any duty that Defendants owed. If courts refused to impose a duty of care on firearm manufacturers, it is difficult to see how imposing such a restriction on those who produce bottles and wrappers is viable, especially when considering they seem to be the only ones in the cross hairs of this action, despite the thousands of other producers of the same materials who have seemingly escaped such scrutiny. 
Imposing civil liability on a manufacturer for the acts of a third party seems contrary to every norm of established jurisprudence. It is not difficult to imagine the lengths prosecuting agencies would take this theory, if adopted, to punish manufacturers for the acts of others who buy their products and then, throw them in a nearby body of water. 
As Defendants rightly note, there are recycling bins everywhere along canalside and the other water tributaries highlighted by the Attorney General. Yet, people continue to litter. Instead of pursuing those who commit the act, the Attorney General wishes to penalize those who produce the discarded item. This theory has never been adopted by a court in this state or any other. 
As the Court of Appeals has reminded, foreseeability should not be confused with the concept of duty. See generally Pulka v. Edelman, 40 NY2d 781 (1976). Contrary to Plaintiff's argument, there exists no duty to produce a different type of plastic wrapper or bottle, nor is there any affirmative duty on these Defendants to reduce their use of plastics or manufacture their product in a different manner. As the Court of Appeals noted in Pulka, if courts were to impose a rule of law "so that liability would be imposed in an instance such as this, it is difficult to conceive the bounds to which liability logically would flow." Id. at 786. In Pulka, a trial court set aside a verdict that found in favor of pedestrians who were struck by a car being driven out of the garage. The Court of Appeals affirmed the trial court, noting that there was no duty owed by the garage to its patrons or pedestrians. The Court of Appeals held that the imposition of a duty upon one unable to control the tort-feasor would be unreasonably burdensome. In Pulka, a parking garage operator could not be held liable for the actions of a driver who disregarded warnings or other precautions. This reasoning applies here. Pepsi/Frito Lay cannot be held liable for the acts of others, who presumably ignore invitations to recycle which are readily found on the plastic containers and wrappers. It also punishes these Defendants for the acts of third parties who ignore laws that already exist prohibiting littering.
Assuming, arguendo, that Defendants were aware of this alleged hazard, this still does not create a duty to warn. See generally Martino v. Stolzman, 18 NY3d 905 (2012). The Second Circuit Court of Appeals has reached a similar conclusion. In McCarthy v. Olin Corp., recognizing that New York does not impose a duty upon a manufacturer to refrain from the [*7]lawful distribution of a non-defective product, the Second Circuit held, "It is unreasonable to impose [a] duty where the realities of every day experience show us that, regardless of the measures taken, there is little expectation that the one made responsible could prevent the . . . conduct [of another]." 119 F.3d 148 (1997).
The Court finds these causes of action lacking and Plaintiff has not provided anything to resuscitate them. In looking to the four corners of the complaint, the allegations do not establish causes of action cognizable at law. In short, the Plaintiff has failed to demonstrate a valid cause of action for public nuisance or failure to warn. 
As such, Defendants' motion to dismiss these causes of action is hereby GRANTED.

General Business Law §349
General Business Law § 349 (a) declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., 37 NY3d 169 (2021). Section 349, "on [its] face[,] appl[ies] to virtually all economic activity." Id. at 176, citing Karlin v. IVF Am., 93 NY2d 282 (1999). Because the legislature was concerned with the impact of deceptive conduct on consumer purchases, General Business Law § 349 prohibits deceptive acts and practices that misrepresent the nature or quality of products and services. Id., citing Teller v Bill Hayes, Ltd., 213 AD2d 141 (2nd Dept. 1995). Put simply, "[t]he statute seeks to secure 'an honest market place' where 'trust,' and not deception, prevails." Id., citing Goshen v. Mutual Life Ins. Co. of NY, 98 NY2d 314 (2002); see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 NY2d 20 (1995).
Here, the Attorney General alleges that Pepsi/Frito Lay has engaged in deceptive practices by selling products that fail to include warnings about the known and foreseeable risks that follow from the intended use. See generally Complaint, ¶113. In doing so, the Plaintiff maintains that Defendants have committed fraud and profited from those fraudulent acts. For many of the reasons set forth above, these two remaining causes of action similarly strain the bounds of credulity.
To be liable for deceptive or misleading conduct, the moving party must demonstrate that the Defendant engaged in materially misleading acts and that that they were likely to mislead the consumer. Here, Plaintiff has pled neither. The Plaintiff has failed to allege how Defendants engaged in deceptive conduct. Plaintiff suggests that Defendants are obligated to include some warning. However, as previously stated, there is no affirmative obligation that requires Pepsi/Frito Lay to provide any warning. Similarly, promising to reduce its use of plastics does not amount to deception. As the Defendants rightly note, a representation or a prediction of something which is hoped or expected to occur in the future is not a misrepresentation of fact. See generally Zanani v. Savad, 217 AD2d 696 (2nd Dept. 1995). PepsiCo's statements were not shown to be misleading, nor was their any basis found in their complaint to suggest that the consumer or general public was somehow misled by these intentions.
Plaintiff seeks to impose a regulatory burden on Defendants that does not exist. Plaintiff also seeks to create liability for Defendants' aspirational statements to curtail a plastic footprint. However, Plaintiff has failed to point to any statutory framework from which to impose such a burden or to establish a theory of liability. Instead, the complaint is replete with general and conclusory allegations that the Defendants made "false representations." This is insufficient to sustain its burden under General Business Law § 349. Principia Partners LLC v. Swap Fin. Group, LLC, 194 AD3d 584 (1st Dept. 2021); see also Barlow v. Skroupa, 221 AD3d 482 (1st [*8]Dept. 2023).
It is important to note that regardless of Defendant's aspirational goals, Pepsi/Frito Lay did not pollute the Buffalo River or any other local waterways—Other people did! Further, even if Plaintiff's suggestion that had Defendants' products contained different warnings was true or if Pepsi/Frito Lay used a reduced amount of plastic, there is no way of knowing that these items would not have been similarly discarded in the water. The Attorney General's allegations are speculative. Absent the legislature passing a law or the executive branch issuing an order establishing such a theory of liability or imposing restrictions on what type and amount of plastic can be used, this lawsuit is simply policy idealism.
In the absence of any actual false representations or statutory obligation that the Defendants are bound by that they otherwise failed to comply with, Defendants' motion to dismiss this cause of action is hereby GRANTED.

Executive Law § 63 (12)
Executive Law § 63 (12) states, in relevant part:
"Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts [and] directing restitution and damages . . . and the court may award the relief applied for or so much thereof as it may deem proper."
Matter of People of the State of NY by Eric T. Schneiderman v. Trump Entrepreneur Initiative LLC, 137 AD3d 409 (2016). Moreover, this section of law defines "fraud" as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions." Id. at 414. 

Here, the complaint alleges that Defendants engaged in "repeated persistent illegality." See Complaint, ¶118. In the complaint's fourth cause of action, there are three paragraphs. However, in none of these paragraphs does the Plaintiff allege what those persistent illegal acts were. Instead, it simply points to the other causes of action where these acts are supposedly found.
Fraud is generally required to be pled with particularity. See generally Dreamco Dev. Corp. v. Empire State Dev. Corp., 191 AD3d 1444 (4th Dept. 2021). Here, no particularity can be found. Instead, the Plaintiff suggests that Defendants have violated some statutory or common law duty. Yet, they fail to reference one.
As such, this cause of action must meet a similar fate to those previously alleged. The Defendants' motion to dismiss this cause of action is hereby GRANTED.

CONCLUSION
For the foregoing reasons, the motion is hereby GRANTED in its entirety and the complaint is DISMISSED. While I can think of no reasonable person who does not believe in the imperatives of recycling and being better stewards of our environment, this does not give rise to phantom assertions of liability that do nothing to solve the problem that exists. This is a purely legislative or executive function to ameliorate and the judicial system should not be burdened with predatory lawsuits that seek to impose punishment while searching for a crime. Plaintiff's proposed use of the judicial system to punish select purported offenders for what she believes to be a righteous cause risks transforming the judiciary into an arm of the legislature, or [*9]at the very least a passive partner in expanding duties that strain the bedrock of well-established law for policy purposes.
Defendants shall submit an order consistent with this memorandum decision.
Hon. Emilio Colaiacovo, J.S.C.
Buffalo, New York
October 31, 2024

Footnotes

Footnote 1:This survey has never been provided to the Court nor has it been attached to any pleading or uploaded to NYSCEF. Only portions of it were included as embedded in the text of the complaint.

Footnote 2:Plaintiff fails to cite to any studies that support this conclusion. Plaintiff inserts multiple graphs and charts, but fails to cite the source of that information.